IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FRANK LEWIS | § | |
| | § | |
| V. | § | CIVIL NO. A-06-CA-058-LY |
| | § | |
| THE HOME DEPOT U.S.A., INC. | § | |

ORDER AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court is Defendant's Motion for Summary Judgment (Clerk's Doc. No. 23) and Defendant's Motion to Strike Summary Judgment "Evidence" Submitted by Plaintiff (Clerk's Doc. No. 46); and Plaintiff's Motion for Leave to File Supplemental Authority (Clerk's Doc. No. 66). The Court held a hearing on the Motions on March 20, 2007.

### I.  BACKGROUND

Frank Lewis, a 51 year-old male (with, as the Court is told, gray hair and moustache[1]), was employed by Home Depot in a number of different positions throughout the course of his nearly 13 year tenure with the company. Lewis complains that he was fired by Home Depot as a result of age discrimination. The basic facts here are straightforward, and, given the requirements of a summary judgment inquiry, the details will be fully fleshed out in the "Analysis" portion of this Report and Recommendation.

Lewis was hired in 1992 as a Sales Associate and worked his way up the company's in-store ladder. He was promoted to a Pro Sales Associate position – in the Home Depot jargon, PASA –

---

[1] Lewis attended the hearing on the motions at issue. The Court would say the most accurate description would be *graying* hair and gray sideburns and mustache.

and also worked in the "Millworks" department (doors and windows). Lewis was consistently awarded raises, starting at $9.00 per hour and leveling off at $16.90 per hour when he was fired. He was also consistently given positive performance reviews, however, there were some issues – seemingly minor in the greater scheme of things – noted with his compliance with certain store procedures.

In 2003, Home Depot transferred John Fey to manage the store where Lewis, then 47 years-old, worked. Lewis alleges that Fey, as soon as he arrived, made an effort to drive out the older workers. For example, Fey made a reference, on at least two occasions, to some workers as "dinosaurs." Lewis began to be reprimanded and written up – primarily by assistant store managers, not Fey (although Lewis alleges it was at the behest of Fey) – for flouting various Home Depot performance policies at a much greater rate than before. Eventually, these disciplinary actions graduated to "Performance Improvement Plans" (PIPs). In early 2004, after being counseled that he was not meeting his sales goals Lewis was placed on his first PIP (PIPs last for 90 days), the first time he had even been placed on one during his time with Home Depot.

In August of that same year Lewis was placed on a second PIP for failing to perform "the basic function of a [PASA]." Lewis, at this point frustrated by what he felt to be unfair criticism, asked to be transferred to the Millworks department; the request was approved. The transfer, however, did not help. Lewis was still reprimanded for not meeting his sales goals – although apparently no one in that department was – and was placed on a third PIP in February 2005. Sixty days into this last PIP, Lewis, still not reaching his sales goals, was fired for not meeting his sales goals and not complying with so-called "Key Standards."

After being fired, he filed a complaint with the Texas Workforce Commission (Civil Rights Division) which made a preliminary determination that Home Depot had not discriminated against Lewis on the basis of his age. Lewis then filed a lawsuit alleging age discrimination in state court. Home Depot removed it to federal court based on this Court's diversity jurisdiction, and shortly thereafter filed a motion for summary judgment..

## II.  DISCUSSION

**A.     Home Depot's Motion to Stike**

As a preliminary matter, the Court needs to decide what evidence it will consider in ruling on Home Depot's motion for summary judgment. Home Depot has asked the Court to strike Lewis' affidavit and those of some other Home Depot employees. The centerpiece of Home Depot's argument is *Wyvill v. United Companies Life Ins. Co.,* which held that "[a]necdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff." 212 F.3d 296, 302 (5th Cir. 2000). The *Wyvil* Court found that the plaintiff there was not similarly situated to the employees whose anecdotal evidence he wished to utilize:

> "[W]ith regard to Wyvil, none of the former employees who testified or who were testified about worked for [the same subsidiary of defendant corporation that plaintiff did]. [That company] was a separately incorporated entity with different management independent from the [company the other employees worked for]. None of the former employees was supervised by [the allegedly discriminating supervisors]. None of the former employees was terminated under circumstances similar to Wyvil's.

*Id*. at 302. As Lewis correctly points out, *Wyvil* can be distinguished in a number of important ways. Here, unlike *Wyvil*, all of the affidavits of the former employees Home Depot wishes to strike worked for the same company (Home Depot). While they all did not work at the same Home Depot

store in Austin, they all worked under John Fey and all accused him of discriminating against them on the basis of their age – again, unlike *Wyvil*. Additionally, three of the four were terminated under circumstances similar to Lewis' termination.[2] Given all these important differences, it seems disingenuous for Home Depot to argue that *Wyvil* controls here.

Home Depot also argues that the affidavits should be struck because they will result "in a parade of mini-trials that would cause unfair prejudice, confusion of the issues, and misleading of the jury." *See* Defendant's Reply in Support of its Motion to Strike at 3 (Clerk's Doc. No. 49). Again, they rely on *Wyvil*. 212 F.3d at 303-04 ("this parade of anecdotal witnesses, each recounting his own, *entirely unrelated* contention of age discrimination at the hands of the defendant, substantially prejudiced [defendant company]") (emphasis added).[3] As just established, the *Wyvil* case is distinct from this case for a number of important reasons, and those reasons apply as much to this point as to the last. Home Depot's reliance on *Schrand v. Federal Pacific Electric Co.*, 851

---

[2]James Pugh: After Fey took what Pugh felt were discriminatory actions, Pugh filed an administrative action for age discrimination against Home Depot. The state administrative agency found in his favor, and that determination was upheld by the EEOC.

Robert Muse, a 61 year-old current Home Depot employee in Kyle, TX, testifies that he worked under Fey and he also went from positive performance reviews pre-Fey to negative ones after Fey arrived to mange the store where he was an Assistant Store Manager. Muse also testified that he began have health problems related to the stress and asked to be transferred to a different store.

Rein Ulesso, a 61 year-old former Home Depot employee, testifies to a substantially similar story. Before Fey arrived at the store he was given positive performance reviews, but after Fey arrived he began to receive numerous disciplinary actions and was later fired. Ulesso has filed an age discrimination lawsuit against Home Depot which is pending.

[3]Home Depot also relies upon an unpublished case, *Hardy v. Fed. Express Corp.*, 1998 U.S. Dist. LEXIS 11726 (E.D. La. 1998), which held that affidavits from former FedEx employees claiming that they were discriminated against by a certain supervisor were not enough to defeat a summary judgment motion and would only work to create "a series of mini trials." *Id*. at *19-20. That case is not on point, however, because the supervisor the witnesses were complaining about was not employed by FedEx at the time the plaintiff was terminated. *Id*. at *19.

F.2d 152, 156 (6th Cir. 1988) suffers from the same problem. There, the witnesses were "two employees of a national concern, working in places far from the plaintiff's place of employment, under different supervisors." *Id*. As already noted, the witnesses whose testimony Lewis is offering worked under the very supervisor he alleges discriminated against him, and were terminated under similar circumstances as him. This case is one in which Judge Posner's statement from *Riordan v. Kempiners* applies. In that case, he reminded us that a plaintiff trying to prove intentional discrimination indirectly or circumstantially should "not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance" because "it so easy [for an employer] to concoct a plausible reason for not hiring, or firing . . . a worker." *Riordan v. Kempiners,* 831 F.3d 690, 698 (7th Cir. 1987).

Home Depot's final argument regarding the affidavits is more general. It contends that all the affidavits, including Lewis', contain testimony "based on speculation, subjective beliefs, and conclusory allegations," and therefore are not competent summary judgment evidence. Defendant's Motion to Strike at 6. "[A]ffidavit . . . testimony setting forth ultimate or conclusory facts and conclusions of law [is] insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997). The issue, then, is whether the affidavits set forth "ultimate or conclusory facts." In short, they do not. Rather, they relate facts within the witnesses knowledge from their time working at Home Depot. The affidavits rationally relate the affiants' perceptions of their time at Home Depot, and are competent summary judgment evidence. The Court therefore **ORDERS** that Home Depot's Motion to Strike be **DENIED** (Clerk's Doc. No. 46).

**B.     Summary Judgment Motion**

    **1.     Standard of Review**

The standard of review for a summary judgment motion is well-known. Summary judgment is appropriate when "there is no genuine issue of as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In making this determination, the Court views the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motin and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004)

Under the relevant state and federal age discrimination statutes,[4] it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349-50 (5th Cir. 2005). Lewis is proceeding under the analytical framework found in *McDonnell Douglas Corporation v. Green*. 411 U.S. 792 (1973); *Machinchick*, 398 F.3d at 350; *see also Wallace v. Methodist Hosp. System*, 271 F.3d 212, 220 (5 th Cir. 2001) (referring to it as the *McDonnell Douglas-Burdine* framework and citing *Tex. Dep't of Cmty. Aff. v. Burdine*, 450 U.S. 248 (1981)). Under this burden-

---

[4]As the Fifth Circuit has noted, Texas's age discrimination statute, TEX. LABOR CODE ANN. §§ 21.001-.556, "is substantively identical to its federal equivalent in Title VII, with the exception that 'federal law makes age discrimination unlawful under the [Age Discrimination Employment Act].'" *McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457, 461 (5th Cir. 2005). Texas's provision for age discrimination claims, TEX. LABOR CODE ANN. §§ 21.001-556, was designed in part to bring Texas in line with federal law addressing discrimination. *Id.* at 462 n.4. The upshot of this is that the Court will utilize federal law to analyze Lewis's claim. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003).

shifting analysis, Lewis must first establish a prima facie case of age discrimination by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, (iii) otherwise discharged because of his age. *Machinchick*, 398 F.3d at 350. If Lewis establishes a prima facie case, the burden of production shifts back to Home Depot to proffer a legitimate nondiscriminatory reason for firing Lewis. *Id*. If Home Depot carries its burden, the presumption of discrimination that Lewis created by making out his prima facie case disappears, and he must meet his ultimate burden of persuasion on the issue of intentional discrimination. *Id*. Lewis could do so by showing that either: (1) the stated reason for the firing is not true, but is instead a pretext for unlawful discrimination; or (2) that the defendant's reason, even if true, was only one reason for the adverse action and age was a "motivating factor" for the adverse action. *Machinchick*, 398 F.3d at 351- 52; *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Claims for disparate treatment under ADEA are analyzed in the same manner as claims for disparate treatment under Title VII. *Rachid*, 376 F.3d at 309.

The Court's analysis will follow the shifting burdens of an age discrimination case, and each burden is addressed in a separate section.

### 2. Prima Facie Case

Home Depot argues that Lewis failed to make out a prima facie case of discrimination, because he cannot fulfill the fourth prong of the prima facie test, that is, that he cannot show either than he was replaced by someone younger than 40, or that he was otherwise discharged because of his age.

On the first point, Home Depot, citing cases from the First, Sixth, and Eighth Circuits, argues that Lewis cannot show that he was replaced by someone outside the protected class, as his position

in the Millworks department was not filled by a new employee, but rather existing employees from that department picked up the slack. *See Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 423 (1st Cir. 1996); *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992); *Frieze v. Boatmen's Bank of Belton*, 950 F.2d 538, 540-41 (8th Cir. 1991). Home Depot's argument concerning *Frieze* is off point, as it does not stand for that exact proposition. 950 F.2d at 541 (holding that where plaintiff did not present evidence that defendant discharged employees over 40 in order to distribute that work to younger workers he was not entitled to a reasonable inference of discrimination). *Lilley* and *Smith*, however, do more work for Home Depot. In *Lilley*, the Sixth Circuit held that "[s]preading the former duties of a terminated employee among the remaining employees does not constitute replacement," *Lilley*, 958 F.2d at 752. In *Smith*, the Court held the same. 76 F.3d at 423 ("a position elimination defense is not defeated merely because another employee, already on the payroll, is designated to carry out some or all of the fired employee's duties"). A number of district courts in this circuit have concurred with the Sixth Circuit's reasoning. *Horak v. Glazer's Wholesale Drug Co., Inc.*, 2006 WL 2017110, *4 (N.D. Tex. July 19, 2006) ("When a terminated employee's job duties are distributed among other employees after termination, those employees do not 'replace' the terminated employee in the context of a prima facie case of discrimination"); *see also Martin v. Beyland Inc.*, 403 F. Supp. 578, 583 (S.D. Tex. 2005), *aff'd* 2006 WL 1308017 (5th Cir. 2006) (holding same); *Dulin v. Dover Elevator Co.*, 1997 WL 88239, *2 (N.D. Miss. 1997), *aff'd* 139 F.3d 898 (5th Cir. 1998). For these reasons, the Court tends to concur with Home Depot that Lewis has not demonstrated that he was replaced by an employee under the age of 40.

On the other hand, it does appear that Lewis can meet the other option of the fourth prong of the prima facie case elements. Home Depot argues that there is no material fact issue as to whether Lewis was terminated because of his age and, therefore, his prima facie case fails. The

argument here is essentially the same argument Home Depot makes later in its brief, to support the claim that Lewis has failed to demonstrate that Home Depot's stated reason for firing Lewis was pretextual.  In the context of the prima facie analysis, Home Depot's argument is putting the analytical cart before the horse; the Court is only concerned with that issue at this point.  As the Fifth Circuit has held, "[o]nly a minimal showing is necessary to meet [the prima facie] burden" in an ADEA (or Title VII) case.  *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999); *see also Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 779 (8th Cir. 1995) (establishing prima facie case in an employment discrimination cause of action not a "difficult or onerous burden").

Lewis contends, and the Court agrees, that he has more than met his burden.  There is, for example, affidavit testimony from Lewis, Ulesso, Pugh, and Muse that point toward age discrimination.  In addition, there is evidence that a number of older employees who were deemed acceptable to above-average were, after Fey's arrival, deemed to be unacceptable and, in many cases, terminated.  Specific to himself, Lewis has introduced evidence that he was given consistently positive performance reviews and continually rewarded with raises until Fey became his store manager.  All of this is enough for Lewis to meet his minimal burden.

### 3. Pretext

The next step in the analysis is dependent on Home Depot proffering a legitimate, nondiscriminatory reason for firing Lewis.  Home Depot has proffered such a justification – Lewis's failure to meet sales goals and follow "Key Standards" (more on that presently).  The analytical framework, then, requires the Court to ask whether Lewis has raised a fact issue showing that: (1) Home Depot's reason is not true, but is instead designed to serve as a pretext for unlawful discrimination; or (2) that Home Depot's reason, even if true, was only one of the reasons for the adverse action and that age was nevertheless a "motivating factor" for the adverse action.

9

*Machinchick*, 398 F.3d at 351- 52.  Since Lewis is proceeding under the pretext framework, he must provide evidence that each of Home Depot's (two) reasons is false and that age discrimination is the real reason he was discharged.  *Wallace v. Methodist Hospital System*, 271 F.3d 212, 220 (5th Cir.2001).   Additionally, Lewis must come forward with more than simply unsupported disagreements with Home Depot's performance assessments.  *Skennion v. Godinez*, 159 Fed. App'x 598, 601 (5th Cir. 2005).  When conducting a pretext analysis the Court is not to engage in second-guessing of an employer's business decisions.  *See Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005); *Mato v. Baldauf*, 267 F.3d 444, 452 (5th Cir. 2001).  Anti-discrimination laws do not require an employer to make proper or correct decisions, only non-retaliatory ones.  *Lemaire v. State of Louisiana*, – F.3d –, 2007 WL 582702, Slip Copy *7 (5th Cir. Feb. 27, 2007).

Lewis contends that he has produced material questions of fact on this issue.  He first points to his record of achievement at Home Depot over the ten-plus years prior to Fey's arrival.[5]   He further points to his overall positive evaluation in October 2003[6] – Fey became store manager in May 2003 – which was followed by, in early January 2004, a discipline notice (his first PIP followed about 20 days later). He also points to the fact that none of the other younger workers were fired for not meeting their sales goals.

---

[5] For example, Lewis includes snippets of positive prior performance reviews which contain statements that praise such as "Strengths: Sales, Sales, Sales" (Sep. 1992), "Strengths: Good Salemanship" (Nov. 1993), "Frank's experience with Home Depot shows in his sales" (May 1995), "Excellent whole job sales" (Apr. 1999), "Frank has considerable sales skills and keeps a higher than average pipeline of quotes" (Oct. 2003).

[6] Lewis did not receive any notations that his performance "needed improvement," and was given the highest rating in three categories: Driving Sales, Sales Knowledge and Skills, and Product Knowledge.

Home Depot first argues that Lewis cannot point to any similarly situated younger employees that were not let go for failing to meet their sales goals. The Fifth Circuit has held that an employee seeking to demonstrate disparate treatment must show "that the misconduct for which [he] was discharged was nearly identical to that engaged in by an employee not within [his] protected class whom the [employer] retained." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001). The "nearly identical" standard, when applied at the *McDonnell Douglas* pretext stage, is a stringent standard – employees with different responsibilities or different supervisors are not considered to be "nearly identical." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001). Home Depot argues that *Wallace* is applicable here because no one else – other than John Hamilton who is older than Lewis – held the title of "Sales Specialist" so none of the other, younger employees is "nearly identical" to Lewis. This is not the test as laid out in *Okoye*. The important fact – one that Home Depot does not dispute – is that all of the employees in the department were failing to meet their sales goals. All of the employees at both the Pro Sales Desk and in the Millworks department – the relevant employee universe here – had sale responsibilities, and had the same supervisors as Lewis. The lack of identical job titles is simply not enough to make the treatment of the other employees irrelevant to judging the treatment of Lewis when he failed to make his sales goals.

Home Depot also claims that prior positive performance evaluations are irrelevant, relying on *Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 20 (1st Cir. 1999) (two previous positive performance evaluations not enough to show pretext where plaintiff "was working in different capacities at different stores, under different supervisors with different expectations"); *see also Clay v. City of Chicago Dep't of Health*, 143 F.3d 1092, 1094 (7th Cir. 1999) (fact that plaintiff at one point received a "good" rating does not help her because uncontradicted evidence is replete

that her performance was extremely flawed); *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) (prior past evaluations designating employee as competent were not enough to show pretext where there were more recent negative evaluations); and *Martin v. Kroger Co.*, 65 F.Supp.2d 516, 552 (S.D. Tex. 1999) ("Any evidence of Martin's prior good performance is insufficient to show pretext in light of her more recent performance problems").  Couple this precedent, Home Depot argues, with the fact that there is documented evidence that Lewis, prior to Fey's arrival, was disciplined for failure to meet sales goals and there is not enough here to create a fact issue on pretext.[7]  By arguing that there is *no* fact issue from this, Home Depot stretches the evidence too far.  For example, Lewis was given the highest ranking in "driving sales" in October of 2003, but in January 2004, a matter of only 8 weeks later, Fey said he was "failing to develop new business."[8]  With the close proximity in time between these two disparate evaluations, Home Depot cannot argue that there is no fact question that the sales-based criticisms are valid.

Finally, Home Depot argues that Fey's "dinosaur" comments were so-called "stray remarks" and cannot be taken as evidence of pretext.  There are a number of age-related comments that Fey reportedly made.  First, as Fey admitted in deposition testimony, he twice used the word "dinosaur" in store meetings which he presided over as store manager (however, he said he never used the word again).  Pugh testified that Fey made such comments as "The dinosaurs are going away" and "The dinosaurs are going extinct" in meetings and out on the floor of the store.  Pugh further testified that Fey, when writing him up for disciplinary action, stated that "I just can't stand to be around old people" and that Fey said to an assistant store manager – Pugh apparently walked up on the tail-end

---

[7]On September 24, 2002, Lewis was reprimanded for failing to meet his sales goals. Defendant's Motion for Summary Judgment, Exh. 15.

[8]Fey was placed at the store where Lewis worked in May 2003.

of the conversation – "These guys are over the hill, and we need to do something about them." Mike Levisuer, a human resources manager, testified that he heard Fey use the term "dinosaur" in at least two meetings and counseled him not to use it in the future because of the implication that it was a pejorative term of older people. In its reply, Home Depot, relying on *Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)*,* argues that these remarks are too remote in time from the action challenged in this case and are "stray remarks" and cannot be considered. In *Auguster*, the court held that remarks more than a year old were not relevant to the discrimination analysis, particularly when was no evidence that they played a role in the decision to fire the plaintiff. *Id*.

      The standard the Fifth Circuit employs for "stray remarks" has been less than clear at times. In some cases, the Fifth Circuit has applied the so-called *CSC Logic* test[9] only when comments were offered as evidence of direct discrimination and rejected its application to cases in which comments were offered as circumstantial evidence; at other times, the Fifth Circuit has applied the *CSC Logic* test in analyzing circumstantial evidence. *Compare Jenkins v. Methodist Hosp. Of Dallas, Inc.,* —F.3d—, 2007 WL 259571 at \*4 (applying four-factor test to evidence of pretext in evaluation a section 1981 claim); *with McLaughlin v. W&T Offshore, Inc*., 78 Fed. Appx. 334, 338-39 (5th Cir. 2003) ("In order to prove pretext in this manner, the statement must: (1) demonstrate a discriminatory motivation, and (2) be made by a person 'primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decision maker.'"); *Laxton v. Gap*, 333 F.3d 572, 583 (5th Cir. 2003) ("We continue to apply the *CSC Logic* test when a remark is presented as direct evidence of discrimination *apart from the McDonnell Douglas*

---

[9]The *CSC Logic* test is "Such remarks may serve as sufficient evidence of age discrimination if the offered comments are: (1) age related; (2) proximate in time to the terminations; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655-56 (5th Cir. 1996).

13

*framework* . . . . [T]he *Russell* court did not apply the *CSC Logic* test to a remark introduced as additional evidence of discrimination."); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000) (holding that workplace remarks sufficed as circumstantial evidence from which inference of discriminatory intent could be drawn even though comments were "stray remarks" under *CSC Logic* test). At least one district court has rejected the application of the *CSC Logic* test to circumstantial evidence:

> At this stage, however, a plaintiff does not have to meet the strict *CSC Logic* test in order to use discriminatory remarks as circumstantial evidence that his or her protected characteristic was a motivating factor for an adverse employment action. The Fifth Circuit has recognized the inherent value of workplace remarks as circumstantial evidence of discriminatory intent, even though such remarks may be "stray remarks" that would not ordinarily suffice as direct evidence of employment discrimination. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir.2000) (holding that workplace remarks sufficed as circumstantial evidence from which an inference of discriminatory intent could be drawn even though comments were found to be "stray remarks" under the *CSC Logic* test); *see also, Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1251 (10th Cir.2002) (holding same). . . . Accordingly, a plaintiff wishing to use workplace remarks as circumstantial evidence of employment discrimination need only prove that the remarks demonstrate (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker. *Laxton*, 333 F.3d at 583; *Sandstad*, 309 F.3d at 899; *Russell*, 235 F.3d at 225.

*Allen v. Solo Cup Co.,* 2006 WL 1949455, at *13 (N.D. Tex. 2006).

In a fairly recent case, the Fifth Circuit held that "A remark is considered probative of discrimination if it demonstrates discriminatory animus and was made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker" *Phillips v. TXU Corp.*, 194 Fed. App'x 221, 228 (5th Cir. 2006). However, the remark can*not* be the only evidence of pretext. *Id*. at 228 (citing *Palasota v. Haggar Clothing*

14

*Co.*, 342 F.3d 569, 577 (5th Cir. 2003) ("After *Reeves* . . . so longs as remarks are not the only evidence of pretext, they are probative of discriminatory intent"). As noted earlier, in the even more recent *Jenkins* case cited by Home Depot, the Fifth Circuit applied the *CSC Logic* factors (although that was a direct discrimination case).

From this, the Court concludes that the appropriate test for judging whether discriminatory remarks are probative of discrimination in a case such as this – one relying on circumstantial evidence – is the two-part test referenced earlier: whether the remarks reflect: (1) discriminatory animus; (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision maker. *See Laxton*, 333 F.3d at 583; *Sandstad*, 309 F.3d at 899; *Russell*, 235 F.3d at 225. It is clear that under this framework Fey's remarks satisfy the two prongs: referring to people as dinosaurs, as Fey admitted he had done, at the very least hints of discriminatory animus toward older workers, and it is beyond dispute that Fey had control over the termination decision. Therefore, this is evidence of pretext. Given Fey's remarks, and the rather dramatic change in tenor of Lewis's evaluations correlated with Fey's arrival, Lewis has met his burden of creating a fact issue here.

Much the same holds true for the pretext issue insofar as the "Key Standards" are concerned. Home Depot renews its argument that there is no similarly situated younger employee who was also disciplined for failing to follow Key Standards. *See Wallace*, 271 F.3d at 221. However, this argument fails for all the same reasons delineated above. Home Depot also argues that Lewis's discharge for failure to follow key standards was part of a larger effort by corporate to re-conceive how sales would be approached via the "CAM" (Commercial Account Management) notebook system (documenting all client contact). Home Depot points out that it was noted on Lewis's pre-Fey performance evaluations that he needed to improve at things like "documenting accurately" and

15

following up on quotes – both Key Standards issues. To be sure, Home Depot's view of the evidence is one way to look at it. However, this is the summary judgment stage of proceedings and the Court must draw all reasonable inferences in favor of Lewis, not Home Depot, and there is another (reasonable) way to view the evidence: these issues – issues that were never indicated as issues that rose to the level of disciplinary offenses and were unarguably documented as minor issues in the context of otherwise favorable evaluations – only became significant problems once Fey, who wanted a younger workforce, arrived. While "different supervisors may impose different standards of behavior, and a new supervisor may decide to enforce policies that a previous supervisor did not consider important," *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1176 n.5 (10th Cir 2006), the evidence does not necessarily point toward such a simple explanation. Given Fey's comments and similar, negative treatment of older employees, and given the directive to make all inferences in Lewis' favor at this stage of the proceedings, there is a fact issue as to pretext here also.

### III. CONCLUSION

This case is far from a slam-dunk. The evidence would allow one, the Court believes, to draw inferences in either the direction of Home Depot's argument that Lewis was fired for valid, non-discriminatory reasons, or Lewis's contention that the reasons are pretextual. However, the standard of review is not balanced at the summary judgment stage of the proceedings. In making this determination at this stage, the Court must skew toward the plaintiff; that is, "view[ ] the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motion and [resolve] all reasonable doubts about the facts . . . in favor of the nonmoving litigant." *Bryan*, 375 F.3d at 360. Therefore, the Court recommends denying Home Depot's motion for summary judgment.

## III.  ORDER AND RECOMMENDATION

Based on the above, the Court **ORDERS** that, as the Court verbally ruled at the hearing on these matters, Plaintiff's Motion for Leave to File Supplemental Authority (Clerk's Doc. No. 66) be **GRANTED**.  The Court further **ORDERS** that Home Depot's Motion to Strike be **DENIED** (Clerk's Doc. No. 46). Finally, the Court **RECOMMENDS** that the District Court **DENY** Defendant's Motion for Summary Judgment *(*Clerk's Doc. No. 23).

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is

directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 10th day of April, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE